UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

JAIME EDUARDO RIOS LEYVA,

Petitioner,

v.

WARDEN *et al.*,

Respondents.

CAUSE NO. 3:26cv737 DRL-SJF

OPINION AND ORDER

Immigration detainee Jaime Eduardo Rios Leyva, by counsel, filed a petition for a writ of habeas corpus under 28 U.S.C. § 2241, alleging he is unlawfully confined in violation of the laws or Constitution of the United States.

Mr. Rios Leyva is a native and citizen of Mexico who last entered the United States in March 2001 as a nonimmigrant B2 visitor [10-1]. He has a notable criminal record including a 2010 conviction for driving without a valid license, a 2011 conviction for operating a vehicle without a license, a 2013 conviction for felony operating a vehicle as a habitual traffic violator, a 2014 conviction for disorderly conduct, and a 2016 conviction for felony operating a motor vehicle after forfeiture of license for life. He also has arrests for domestic battery and disorderly conduct. In 2013, he was arrested by United States Immigration and Customs Enforcement (ICE) agents and released from ICE custody on bond a day later. In 2024, Mr. Rios Leyva's wife was the victim of a violent crime and filed a Form I-918, Petition for U Nonimmigrant Status (commonly referred to as a "U visa"), which is a program for non-citizen crime victims who cooperate with law enforcement [1-2;

1-3]. Mr. Rios Leyva then filed a Form I-918 Supplement A, Petition for Qualifying Family Member of a U-1 Recipient, applying to be a beneficiary of his wife's U visa petition. He asserts he now is a beneficiary of the petition. He also filed an I-192 application to waive inadmissibility. In August 2025, his wife received a bona fide determination notice for her U visa petition, making her eligible to be placed in deferred action for removal [1-3].[1]

On September 20, 2025, Mr. Rios Leyva was arrested for resisting law enforcement, disorderly conduct, and public intoxication [10-1]. He posted bond, and was then arrested by ICE pursuant to an administrative warrant. He has been in ICE custody ever since.

Mr. Rios Leyva requested custody redetermination before an immigration judge, and the immigration judge denied bond on February 12, 2026, because Mr. Rios Leyva did not meet his burden to show he did not pose a risk of flight or a danger to the community [10-1]. On March 26, 2026, the immigration judge ordered Mr. Rios Leyva removed to Mexico, declining to exercise jurisdiction over his I-192 application to waive inadmissibility. Mr. Rios Leyva then submitted a second motion for custody redetermination based on changed circumstances pursuant to 8 C.F.R. § 1003.19(e), which was denied by an immigration judge on April 16, 2026, because he did not show materially changed circumstances since his last

[1] Though Mr. Rios Leyva has provided evidence his wife received a bona fide determination notice for her U Visa petition, it is unclear from the record whether he has received a bona fide determination for his Form I-918, Supplement A. *See* 3 USCIS Policy Manual C.5(A)(2) ("A qualifying family member is not guaranteed a [bona fide determination] solely because the principal petitioner receives a [bona fide determination]. The record must independently demonstrate the Form I-918, Supplement A is bona fide."). USCIS determines the qualifying family member's petition is bona fide only when the principal has received a bona fide determination, the family member has a properly filed Form I-918 Supplement A, there is credible evidence of the qualifying relationship, and USCIS has received the family member's own background and security-check results based upon biometrics.

bond decision. Mr. Rios Leyva appealed the immigration judge's removal order and bond order to the Board of Immigration Appeals (BIA). *Id.* at 21-26. Both appeals are pending.

Mr. Rios Leyva then filed this petition for habeas corpus, arguing that (1) his detention violates immigration laws and due process, and (2) his detention is arbitrary and capricious in violation of the Administrative Procedure Act.

In an order to show cause, the court directed the respondents to address the petition in light of *De Jesús Aguilar v. English*, No. 3:25cv898, 2025 WL 3280219, 8 (N.D. Ind. Nov. 25, 2025), and subsequent cases, which joined the overwhelming majority of other district courts in concluding that § 1225(b)(2) does not apply to noncitizens who are not "seeking admission" at a port of entry and are instead arrested within the interior of the United States. The parties were instructed only to brief what is different or new, not what has been decided, and those issues particular to this petitioner. The respondents answered the petition, and Mr. Rios Leyva filed a reply.

As a preliminary matter, Mr. Rios Leyva was ordered to show cause why every respondent but the Miami Correctional Facility Warden, the only respondent who exercises "day-to-day control" over him, should not be dismissed under *Kholyavskiy v. Achim*, 443 F.3d 946, 952 (7th Cir. 2006). Relying on *Rumsfeld v. Padilla*, 542 U.S. 426 (2004), the court of appeals concluded the proper respondent in an immigration habeas case challenging the constitutionality of a petitioner's confinement is the warden of the facility where the petitioner is being held, not a supervisory official who has the authority to free the petitioner. *See also Doe v. Garland*, 109 F.4th 1188, 1192 (9th Cir. 2024); *Anariba v. Dir. Hudson Cnty. Corr. Ctr.*, 17 F.4th 434, 444 (3rd Cir. 2021).

He argues that he properly named the Chicago ICE Field Office Director as a respondent because he is detained under his immediate legal authority. The court disagrees. *Kholyavskiy* and other cases from this circuit make clear that it is improper to name an immigration official as a respondent in a habeas case challenging immigration-related detention. Doing so "conflate[s] the person responsible for authorizing custody with the person responsible for maintaining custody," but "[o]nly the latter is a proper respondent." *al-Marri v. Rumsfeld*, 360 F.3d 707, 708 (7th Cir. 2004) ("[T]he President as a respondent was not only unavailing but also improper, and we have removed his name from the caption. . . . True, the President authorized al-Marri's custody by designating him as an enemy combatant, but there is a difference between authorizing and exercising custody."); *Robledo-Gonzales v. Ashcroft*, 342 F.3d 667, 673 (7th Cir. 2003) ("[I]t is not sufficient that the named respondent simply be involved, in some manner, with the petitioner's detention. Sections 2242 and 2243 indicate that the custodian is the person having a day-to-day control over the prisoner.") (quotations omitted). The court concludes that dismissal of the non-custodial respondents is appropriate. For clarity, the court refers to the responding party as the Warden from this point forward.

In his response, the Warden (through his federal counsel) concedes Mr. Rios Leyva is detained under § 1226(a)—the "default rule" for detention of noncitizens who are present in the United States, *Jennings v. Rodriguez*, 583 U.S. 281, 303 (2018)—but argues he already received all the process he is due. "On a warrant issued by the Attorney General, an alien may be arrested and detained" while removal proceedings are pending, and the Attorney General "(1) may continue to detain the [noncitizen]; and (2) may release the [noncitizen]

on (A) bond . . . or (B) conditional parole" until removal proceedings conclude. 8 U.S.C. § 1226(a). A noncitizen detained under § 1226(a) is entitled to an individualized bond hearing. *Jennings*, 583 U.S. at 306.

The record reflects that Mr. Rios Leyva was arrested pursuant to a warrant, which accords with § 1226(a). He was also given a bond hearing, at which the immigration judge considered his individual circumstances and determined that he should not be released because he posed a flight risk or a danger to the community. And he was permitted to request a second bond hearing based on changed circumstances, which was denied by the immigration judge because he did not show materially changed circumstances since the last bond decision. The record indicates that § 1226(a) and attendant regulations have been followed in Mr. Rios Leyva's case.

Mr. Rios Leyva argues that his detention conflicts with ICE policies governing noncitizens who seek victim-based immigration benefits. He argues that, as the derivative beneficiary of his wife's bona fide U visa petition and a member of a class certified in *Immigration Center for Women and Children v. Noem* (*ICWC*),[2] he can't be detained without a hearing to revoke deferred action or an individualized determination under the policies in effect before 2025. In his view, ICE's detention and pursuit of removal amount to a *de facto* revocation of deferred action that only USCIS may terminate under 8 C.F.R. § 214.14(d)(2).

[2] *ICWC* is a nationwide class action under the Administrative Procedure Act challenging the 2025 Guidance and related practices affecting applicants for U Visas and relief under the Violence Against Women Act. *Immigr. Ctr. for Women & Children v. Noem*, 351 F.R.D. 324 (C.D. Cal. 2026).

Some background helps. ICE's 2011 Policy Statement 10076.1 and 2021 Directive 11005.3 generally instructed officers, absent exceptional circumstances, to refrain from civil immigration enforcement against known beneficiaries of victim-based immigration benefits and known principal or derivative applicants for those benefits. The 2021 Directive also instructed ICE to defer enforcement while USCIS made a preliminary determination, seek expedited adjudication for applicants in custody, and treat eligibility for victim-based benefits as a positive factor in custody decisions. *ICWC*, 351 F.R.D. at 353. These policies did not categorically prohibit enforcement or require release. The 2011 Policy permitted ICE to consider "serious adverse factors," including a serious criminal history, and the 2021 Directive permitted enforcement in "exceptional circumstances." *Id*.

On January 30, 2025, ICE replaced that framework with Policy Statement 11005.4. The 2025 Guidance expressly rescinded and superseded the earlier policies, eliminated their general presumption against enforcement, stated that officers need not treat crime-victim status as a positive discretionary factor, and ended routine requests for expedited USCIS adjudication. *Id.* at 353-54. In *ICWC*, the district court concluded that the plaintiffs were likely to succeed on their Administrative Procedure Act challenges and stayed the 2025 Guidance, including its rescission of the earlier policies. *Id.* at 381-88, 397.

The *ICWC* court also preliminarily certified three nationwide classes, two of which matter here. The Pending Petition Class includes individuals with pending principal or derivative U visa petitions whom ICE detains or seeks to detain. *Id.* at 396. The narrower Deferred Action Class includes individuals to whom USCIS actually granted deferred action based on a pending U visa petition and whom ICE detained, sought to detain, or removed

during the authorized period without notice and an opportunity to be heard regarding revocation. *Id.* The court stayed the 2025 Guidance for both classes, but separately stayed—only for the Deferred Action Class—ICE's alleged practice of detaining or removing individuals despite a still-valid USCIS grant of deferred action and without first following USCIS's procedures for terminating that protection. *Id.* at 397. Thus, while its order restored the pre-2025 discretionary framework for members of the Pending Petition Class, it did not place every member of that class into the Deferred Action Class or direct the release of every detainee with a pending petition.

Before considering what that means for Mr. Rios Leyva, the court must distinguish his detention claim from his challenges to the removal proceedings. The court has jurisdiction under § 2241 to decide whether his present custody is authorized by federal law and comports with due process. Section 1252(b)(9) does not channel an independent detention challenge into the petition-for-review process merely because removal proceedings are pending. *Jennings*, 583 U.S. at 293-95. The court thus may decide whether his custody under § 1226(a) is lawful.

It may not, however, use habeas review to adjudicate the merits of his removal proceedings. The Immigration and Nationality Act provides that "[j]udicial review of all questions of law and fact . . . arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section." 8 U.S.C. § 1252(b)(9). It further provides that review of a final removal order must occur through "a petition for review filed with an appropriate court of appeals." 8 U.S.C. § 1252(a)(5). Thus, insofar as Mr. Rios Leyva asks

this court to review the immigration judge's removal order or other decisions made in determining removability, those matters must first proceed through administrative review and then, following a final order, through a petition for review in the appropriate court of appeals. *Morales-Ramirez v. Reno*, 209 F.3d 977, 979 (7th Cir. 2000). This distinction leaves the legality of his present custody before this court, but not whether he should be removed or receive a waiver of inadmissibility.

On the detention question, the record does not establish the premise of Mr. Rios Leyva's deferred-action theory. As already noted, the evidence shows only that his wife received a bona fide determination, and does not show that USCIS made a corresponding determination concerning his derivative petition. More important, Mr. Rios Leyva has produced no notice or other evidence that USCIS granted deferred action to him. A pending derivative petition may place him within the Pending Petition Class, but membership in the Deferred Action Class requires an actual grant of deferred action by USCIS. Without proof of such a grant, his detention cannot be characterized as a *de facto* revocation of a status the record does not show he possessed. Although § 214(d)(2) provides for deferred action or parole to qualifying family members of waitlisted U-1 petitioners, Mr. Rios Leyva has produced no notice or other evidence that USCIS granted either form of relief to him. The pendency of his Form I-918, Supplement A does not establish such a grant.

Nor does *ICWC* require Mr. Rios Leyva's release. The stay entered there reinstated the earlier policies' general presumption against enforcement and their requirement of favorable consideration, but those policies retained discretion and did not make release automatic. *See Ayala-Morales v. Olson*, No. 2:26cv375, 2026 WL 1781976, 3 (S.D. Ind. June 22,

2026). Moreover, the record here shows individualized custody review on two occasions: the immigration judge considered his circumstances and found that he posed a flight risk or danger to the community, and the immigration court later considered whether changed circumstances warranted another bond determination. Those are the procedures § 1226(a) makes available, and *ICWC* never displaced them (nor could).[3]

And last, neither due process nor the *Accardi* doctrine alters this conclusion. Agencies must follow their governing regulations. *See United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 268 (1954). But Mr. Rios Leyva has not shown that the government disregarded a regulation governing his custody, that any internal policy would be binding as a matter of due process or administrative principles, *see, e.g., Z.G. v. Olson,* ___F. Supp.3d___, 2026 WL 1279081, 16-18 (N.D. Ind. May 11, 2026), that the pre-2025 enforcement guidance created a categorical right to remain free from detention, or that USCIS ever granted him deferred action, such that procedures governing the termination of that protection would apply. To the extent his APA claim rests on the same 2025 policy, the *ICWC* stay supplies class-wide relief against that policy; it does not establish that his detention under § 1226(a) is unlawful or entitle him to release in this case.

The court's holding is limited. It does not decide whether Mr. Rios Leyva ultimately qualifies for derivative U visa status, whether USCIS should grant him deferred action, whether the immigration judge correctly handled his removal proceedings, or what

[3] This court recently rejected a materially similar attempt to obtain habeas release based on *ICWC*. *See Ruiz Zaldivar v. Olson*, No. 3:26cv919, 2026 WL 2110629, 4 (N.D. Ind. July 22, 2026). The court explained that *ICWC* remained preliminary, its non-final order did not have preclusive effect in a separate habeas proceeding, and any relief available to a class member could be pursued through that litigation. *Id.*; *see also Taylor v. Sturgell*, 553 U.S. 880, 892 (2008). The same conclusion follows.

additional relief may be available to him through *ICWC*. It concludes only that the present record shows detention remains authorized by § 1226(a), two individualized custody determinations, no individual grant of deferred action, and no class-wide order requiring his release. Mr. Rios Leyva has not shown that his present custody violates the Constitution or laws of the United States, or that he is entitled to habeas relief.

For these reasons, the court DENIES the petition (ECF 1) and DIRECTS the clerk to close this case.

SO ORDERED.

September 18, 2026

*s/ Damon R. Leichty*
Judge, United States District Court